JERRICA MARIE SMITH,

      Plaintiff,

                            Case No. 3:16-cv-00708
      vs.                   CHIEF JUDGE CRENSHAW
                            Magistrate Judge King

SOCIAL SECURITY ADMINISTRATION,

      Defendant.

To:  The Honorable Waverly D. Crenshaw, Jr., Chief Judge

## REPORT AND RECOMMENDATION

This is an action instituted under the provisions of 42 U.S.C. §§ 405(g), 1383(c) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income. This matter is before the Court on Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 16)("Motion for Judgment"), Defendant's Response to Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 17)("Response"), and the administrative record (Doc. No. 10).[1] For the following reasons, the undersigned **RECOMMENDS** that the Motion for Judgment (Doc. 16) be **GRANTED**, that the decision of the Commissioner be **REVERSED**, and that the matter be **REMANDED** to the Commissioner of Social Security, pursuant to Sentence 4 of 42 U.S.C. § 405(g), for further consideration of whether Plaintiff's intellectual impairment meets or equals Listing 12.05C.

---

[1] Citations to pages in the Administrative Record will appear as "Tr. __."

## Introduction

Plaintiff filed her application for supplemental security income on June 22, 2009. The application was denied initially and on reconsideration and Plaintiff requested a *de novo* hearing before an administrative law judge ("ALJ"). An administrative hearing was originally held in December 2011, Tr. 65-83, following which the ALJ found that Plaintiff was not disabled. Tr. 89-104. On July 2, 2013, however, the Appeals Council remanded the case for further consideration of Plaintiff's alleged substance use disorder, residual functional capacity ("RFC"), and past relevant work. Tr. 110-12. A second administrative hearing was held on October 18, 2013, before a different ALJ. Tr. 41-64. Plaintiff, who was represented by counsel, testified at that hearing, as did Dana M. Stoller, who testified as a vocational expert.

In a decision dated December 20, 2013, the ALJ held that Plaintiff was not disabled within the meaning of the Social Security Act from the date of her application for benefits through the date of the administrative decision. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on February 16, 2016.

This action was thereafter timely filed. This Court has jurisdiction over the matter. 42 U.S.C. § 405(g).

## Standard of Review

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the ALJ are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971);

*Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)(internal quotation marks and citation omitted). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475 (6th Cir. 2003). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Services*, 667 F.2d 524, 536 (6th Cir. 1982). If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth v. Commissioner Social Security Administration,* 402 F.3d 591, 595 (6th Cir. 2005)(citing *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

**The Findings and Conclusions of the ALJ**

In her decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since June 22, 2009, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: right carpal tunnel syndrome status post release in 2009; obesity; depressive disorder not otherwise specified; mild mental retardation versus borderline intellectual functioning; rule out personality disorder; polysubstance dependence; rule out

3

borderline intellectual functioning; and rule out learning disorder (20 CFR 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) occasional lifting of thirty pounds, frequent lifting of fifteen pounds, standing and walking for five to six hours total in an eight-hour workday, and sitting for seven hours total in an eight-hour workday. When not using substances, the claimant can understand, remember, and carry out simple, one- and two-step instructions only and make simple, repetitive decisions. The claimant is able to ask simple questions or request assistance if needed; able to maintain attention for periods of at least two hours and complete a normal work week with acceptable performance and productivity under normal supervision; able to maintain regular attendance, able to be punctual within customary tolerances, and able to sustain an ordinary routine without special supervision. In addition, the claimant is able to accept instructions and respond appropriately to criticism from supervisors; able to interact appropriately with peers and supervisors; able to work with the general public; and able to set goals. The claimant should avoid hazards and is able to adapt to infrequent workplace changes.

5.    The claimant is able to perform her past relevant work as an assembler (20 CFR 416.965).

6.    The claimant has not been under a disability, as defined in the Social Security Act, since June 22, 2009, the date the application was filed (20 CFR 416.920(g)).

Tr. 17, 21, 35-36.

**Summary and ALJ's Evaluation of Relevant Evidence**

Plaintiff left school in the 9th grade. She reported to the state agency that, although she can read and write in English, Tr. 237, she is "slow" and needs help in doing so. Tr. 238, 246. She has difficulty

4

filling out job applications. Tr. 74-75. However, her hobbies include reading. Tr. 71, 247. Plaintiff testified that she left her past relevant job as an assembler because she was worried about child care, Tr. 74, and because the job ended. Tr. 56.

In 1998, when Plaintiff was 16 years of age, a school psychologist administered the WISC-III, on which Plaintiff obtained a verbal IQ score of 62, a performance IQ score of 61, and a full scale IQ score of 61. Tr. 272.[2] On the WJAT-R, Plaintiff achieved a grade equivalent of 3.6 in reading and 2.9 in written language, results that were characterized as "[d]eficient" but "commensurate with [Plaintiff's] level of intellectual functioning" on the WISC-III. Tr. 273. Based on the Vineland Adaptive Behavior Scales, Plaintiff's adaptive functioning was characterized as "significantly outside of expectations for a child her age," but "generally commensurate with her intellectual[] ability. . . ." Tr. 272. According to the school psychologist, Plaintiff appeared "to put forth good effort," and these "test results are useful." *Id*. The examiner opined that Plaintiff continued to meet the criteria "for special education services as a child with mental retardation." *Id*.

In October 2009, Plaintiff was psychologically evaluated at the request of the state agency by Alice K. Garland, M.S. Apparently, Plaintiff's school records were not provided to Ms. Garland. *See* Tr. 336. Based on her mental status examination, Ms. Garland estimated that Plaintiff's intelligence was "[m]ildly retarded to borderline." *Id*. On the WAIS-III, Plaintiff achieved a verbal IQ score of 61, a

---

[2] The ALJ erroneously indicated that Plaintiff's verbal IQ score on this test was "sixty-six." Tr. 27.

performance IQ score of 60, and a full scale IQ score of 58. Tr. 339. These scores would place an individual in the mildly mentally retarded range; however, Ms. Garland suspected that these results were "slightly low" estimates of Plaintiff's ability, although she believed that Plaintiff had used her best efforts on the WAIS-III. *Id.*[3] Ms. Garland did not think that Plaintiff "is over borderline and possibly mildly retarded." *Id*. Ms. Garland's diagnostic impression was "[m]ild mental retardation to borderline intellectual functioning." *Id*. According to Ms. Garland, Plaintiff's limitation in her ability to perform very detailed and complex tasks is "moderate if not marked," her ability to persist and concentrate is at least moderately limited, as is her ability to adapt, and her ability to deal with the public is mildly impaired. *Id.*

In February 2010, P. Jeffrey Wright, Ph.D., reviewed the record and concluded that Plaintiff's "MMR vs BIF" [*i.e.*, mild mental retardation vs. borderline intellectual functioning] does not meet or equal Listing 12.05. Tr. 345. However, like Ms. Garland, Dr. Wright did not have Plaintiff's school records available for his review. *See* Tr. 395 **("\*\*\*Special Education classes, no records received**.")(emphasis in original). In June 2010, George T. Davis, Ph.D., affirmed Dr. Wright's opinion. Tr. 475.

In January 2012, Plaintiff underwent a consultative psychological examination by Michael C. Loftin, Ph. D., at the request of the state agency. On mental status examination, Plaintiff was able to follow

---

[3] Ms. Garland did not think that Plaintiff had used her best efforts on achievement testing. Tr. 339.

written instructions, but showed a poor use of basic vocabulary and basic math skills. Tr. 618. Plaintiff's academic skills were measured on the WRAT-4 at a 3rd to 4th grade level. Tr. 625. On the WAIS-IV, Plaintiff achieved a verbal comprehension score of 81, which fell in the low average range, a perceptual reasoning score of 79 and a working memory score of 77, which fell in the borderline range, and a full scale IQ score of 75, which placed her in the borderline range of intellectual functioning. Tr. 622-23. Dr. Loftin's diagnostic impression was, *inter alia*, borderline intellectual functioning. Tr. 625. "She appears able to follow instructions, both written (simple) and spoken." *Id.*

The vocational expert testified at the second administrative hearing that Plaintiff's past relevant work as an assembler is unskilled and required light exertion. Tr. 57. Asked to assume a claimant with "a ninth grade education," with the RFC ultimately found by the ALJ, Tr. 58-59, the vocational expert testified that such a claimant could perform the work of an assembler – not as Plaintiff described it – but as normally performed. Tr. 59. Additionally, the vocational expert testified, such a claimant could also perform other jobs that exist in significant numbers in the national economy, including such jobs as garment worker, basket filler, and laundry folder. Tr. 60.

The ALJ gave "significant weight" to Ms. Garland's assessment and to those of the state agency reviewing psychologists, Drs. Wright and Davis. Tr. 34. The ALJ gave "little weight" to Dr. Loftin's assessment because he did not have the benefit of Plaintiff's school records and

because his report contained several inconsistent findings, *e.g.*, "a GAF score indicating moderate limitations but an assessment of no more than mild limitations." *Id*.

The ALJ expressly considered the IQ scores reflected in the record. Plaintiff's school records

> reflect[] sub-average intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period. . . . Ms. Garland found that the claimant's obtained IQ scores were slightly low estimates of her actual ability, making the results of her intellectual testing questionable in their validity. The claimant's representative argued that, even with Ms. Garland's finding that the claimant's IQ scores were "slightly low estimates," 12.05(c) could still be met. However, it would be mere speculation as to what the claimant's actual IQ scores are[,] given the questionable validity of her obtained scores during the consultative evaluation and her questionable effort. As . . . 12.05(c) require[s] valid IQ scores, the absence of such valid scores does not satisfy the criteria of [Listing 12.05C].

Tr. 27. The ALJ also found that the full scale IQ score of 75, reported by Dr. Loftin, "further calls into question the validity of the IQ scores" obtained by Ms. Gardner. Tr. 29. As noted, the ALJ found that Plaintiff's intellectual impairment, which she characterized as "mild mental retardation versus borderline intellectual functioning; . . . rule out borderline intellectual functioning," Tr. 17, does not meet Listing 12.05. Tr. 21.

Relying on the testimony of the vocational expert, the ALJ found that, despite Plaintiff's severe impairments, she can nevertheless perform her past relevant work as normally performed. Tr. 35. Alternatively, the ALJ relied on the vocational testimony and used the Medical-Vocational Guidelines as a framework – after finding that Plaintiff "has a limited education and is able to communicate in

English," Tr. 35 – to find that Plaintiff's RFC would permit her to perform other jobs that exist in significant numbers in the economy. Tr. 35-36. Accordingly, the ALJ concluded that Plaintiff is not disabled.

## Plaintiff's Claims

Plaintiff presents the following statement of errors:

Listing 12.05(C): Substantial Evidence Does Not Support the ALJ's Step-Three Finding That Smith Neither Met Nor Equaled Listing 12.05(C).

Education: The ALJ Made Multiple Harmful Errors Regarding Smith's Education: Objective Testing Showed That Smith Was Functionally Illiterate.

Motion for Judgment (Doc. 16, PageID# 709, 714). The Court will consider these claims in reverse order.

## Discussion

### 1.

Plaintiff contends that the ALJ mischaracterized Plaintiff's education. Motion for Judgment (Doc. 16, PageID# 714). The ALJ found, for purposes of applying the Medical-Vocational Guidelines, that Plaintiff has a "limited education," which is defined as "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties need in semi-skilled or skilled jobs." 20 C.F.R. § 416.964(b)(3). Plaintiff argues that, in light of achievement testing performed by Ms. Garland and Dr. Loftin, the ALJ should have found that Plaintiff is "functionally illiterate." Motion for Judgment (Doc. 16, PageID# 718). *See* 20 C.F.R. § 416.964(b)(1)(A claimant is illiterate "if the person cannot read or write a simple message such

as instructions or inventory lists even though the person can sign his or her name."). There is evidence in the record that Plaintiff can read. *See, e.g.*, Tr. 71, 237, 247, 369. In any event, however, the ALJ's finding in this regard is immaterial in light of the vocational testimony and the ALJ's finding that Plaintiff can perform her past relevant work as an assembler regardless of her severe impairments. Any error on the part of the ALJ, if indeed there is error in this regard, was therefore harmless.

**2.**

As noted *supra*, the ALJ found that Plaintiff suffers severe physical and mental impairments, including the intellectual impairments of "mild mental retardation versus borderline intellectual functioning; . . . rule out borderline intellectual functioning." Tr. 17. However, the ALJ found that Plaintiff's intellectual impairments neither met nor equaled a listed impairment, including Listing 12.05. Tr. 18, 21. That Listing requires, under appropriate circumstances, a finding of disability based on a claimant's intellectual disability:[4]

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> ***
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

---

[4] Prior to September 3, 2013, Listing 12.05 referred to "mental retardation," rather than to "intellectual disability."

In order to satisfy Listing 12.05C, a claimant must establish three elements: that she experiences "significantly subaverage general intellectual functioning with deficits in adaptive functioning[5] [that] initially manifested during the developmental period" (*i.e.*, the diagnostic description); (2) that she has a "valid verbal, performance, or full scale IQ of 60 through 70;" and (3) that she suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id. See also Foster v. Harris*, 279 F.3d 348, 354–55 (6th Cir. 2001).

Plaintiff argues that she satisfies Listing 12.05C in light of her school records and the testing results reported by Ms. Garland and in light of the other severe impairments found by the ALJ. Certainly, the IQ scores contained in Plaintiff's school records and reported by Ms. Garland – if valid – would meet Listing 12.05C.

Although it is well established that an IQ score may be helpful in assessing whether an individual has a medically determinable mental impairment, that score is not the sole determinative criterion. "[T]he results of intelligence tests are only part of the overall assessment." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 (D)(6)(a). "The narrative report that accompanies the test results should comment on whether the I.Q. scores are considered valid and consistent with the developmental history and the degree of functional limitation." *Id.* "To be valid, an IQ score must reflect the 'plaintiff's true

---

[5] "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007) (citing *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993)). *See also Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 677 (6th Cir. 2009).

abilities, as demonstrated by his or her performance at work, household management and social functioning.'" *Joyce v. Comm'r of Soc. Sec.*, 662 Fed. Appx. 430, 434 (6th Cir. 2016)(quoting *Brown v. Secretary of Health & Human Services,* 948 F.2d 268, 269 (6th Cir. 1991)). *See also Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 721 (6th Cir. 2012)(noting that an IQ score that satisfies the severity criteria, standing alone, does not require a finding of intellectual disability); *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 872-74 (6th Cir. 2003)(evaluating additional evidence of intellectual functioning under the diagnostic criteria).

The ALJ found that the IQ scores contained in Plaintiff's schools records and as reported by Ms. Garland were not valid in light of Ms. Garland's suspicion that they were "slightly low," Tr. 27, 339, and in light of the substantially higher IQ scores reported by Dr. Loftin, Tr. 29. However, the ALJ accorded "little weight" to Dr. Loftin's assessment because, *inter alia*, he did not have the benefit of Plaintiff's school records. Tr. 34. Instead, the ALJ accorded "significant weight" to the assessments of Ms. Garland and of the state agency reviewing psychologists. Yet, none of these psychologists had the benefit of Plaintiff's school records either. *See* Tr. 336, 395, 475. Moreover, and perhaps most significantly, although Ms. Garland suspected that Plaintiff's IQ scores were "slightly low," Tr. 339, her ambiguous diagnostic assessment – *i.e.*, "[m]ild mental retardation to borderline intellectual functioning," *id*. – did not eliminate a level of intellectual functioning inconsistent with Listing 12.05C.

Under all these circumstances, the undersigned concludes that the finding of the ALJ, *i.e.*, that Plaintiff's intellectual impairment neither meets nor equals Listing 12.05, is not supported by substantial evidence in the record.

Plaintiff asks that the Commissioner's decision be reversed and that the Court remand the matter with directions for an award of benefits. Motion for Judgment (Doc. 16, PageID# 718). The undersigned declines to so recommend. Where, as here, there exists conflicting evidence relevant to the  proper resolution of plaintiff's claim, the matter must be remanded for further proceedings by the Commissioner, whose duty it is to resolve such conflicts. *Faucher v. Sec'y of Health and Hum. Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

## Recommendation

In light of the foregoing, the undersigned **RECOMMENDS** that the Motion for Judgment (Doc. 16) be **GRANTED**, that the decision of the Commissioner be **REVERSED**, and that the matter be **REMANDED** to the Commissioner of Social Security, pursuant to Sentence 4 of 42 U.S.C. § 405(g), for further consideration of whether Plaintiff's intellectual impairment meets or equals Listing 12.05C.

## Procedure on Objections

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for the objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections

must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)). Filing only "vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Drew v. Tessmer*, 36 F. App'x 561, 561 (6th Cir. 2002) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)).

*s/Norah McCann King*
Norah M$^c$Cann King
United States Magistrate Judge

October 19, 2017
(Date)

14