UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JERRICA M. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO.: 3:16-cv-00708 |
| | ) | CHIEF JUDGE CRENSHAW |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This Social Security case is before the Court on a Report and Recommendation ("R & R") (Doc. No. 19) from the Magistrate Judge. The R & R recommends that this action be remanded to the Commissioner for further consideration of whether Plaintiff's intellectual impairment meets or equals Listing 12.05C. In making the recommendation, the Magistrate Judge concluded that the Administrative Law Judge ("ALJ") erred at step three of the applicable analysis[1] on the following grounds:

> The ALJ found that the IQ scores contained in Plaintiff's school records and as reported by Ms. Garland were not valid in light of Ms. Garland's suspicion that they were "slightly low," Tr. 27, 339, and in light of the substantially higher IQ scores reported by Dr. Loftin, Tr. 29. However, the ALJ accorded "little weight" to Dr. Loftin's assessment because, inter alia, he did not have the benefit of Plaintiff's school records. Tr. 34. Instead, the ALJ accorded "significant weight" to the assessments of Ms. Garland and of the state agency reviewing psychologists. Yet, none of these psychologists had the benefit of Plaintiff's school records either. See Tr. 336, 395, 475. Moreover, and perhaps most significantly, although Ms. Garland

---

[1] Eligibility for disability benefits is determined by utilizing the sequential five-step process set forth in 20 C.F.R. § 404.1520. Step three asks whether a medically severe physical or mental impairment of sufficient duration, alone or in combination with other impairments, is equivalent to any of a number of listed impairments. Id. § 404.1520(a)(iv)(iii) & (d). If listed, the impairment is conclusively presumed disabling. Id.

1

suspected that Plaintiff's IQ scores were "slightly low," Tr. 339, her ambiguous diagnostic assessment – i.e., "[m]ild mental retardation to borderline intellectual functioning," id. – did not eliminate a level of intellectual functioning inconsistent with Listing 12.05C.

(Doc. No. 19 at 12).

The Government has filed Objections to the R & R based upon two interrelated principles. First, the Government argues the Magistrate Judge neglected to consider that, in accordance with the unpublished decision in Bledsoe v. Barnhart, 165 F. App'x 408, 411 (6th Cir. 2006), an ALJ is under no obligation to spell out "every consideration that went into the step three determination," and that a court should search the entire decision for statements supporting that analysis. Second, the Government relies on Justice v. Comm'r of Soc. Sec., 515 F. App'x 583, 588 (6th Cir. 2013) for the proposition that, "[i]n a battle of experts, the agency decides who wins" and the "fact that [the claimant] now disagrees with the ALJ's decision does not mean that the decision is unsupported by substantial evidence."

Having considered the record *de novo* in accordance with Rule 72(b)(3) of the Federal Rules of Civil Procedure, the Court agrees with the recommended disposition. Accordingly, the R & R will be adopted, the Government's objections will be overruled, and this matter will be remanded to Commissioner for further consideration.

**I.**

Under step three, Plaintiff sought to show that her impairments qualified under the listings in Section 12.05 of the appendix to subpart P of 20 C.F.R. § 404. Those listings relate to what was previously characterized as "mental retardation," and is now identified as "intellectual disability."[2]

---

[2] Plaintiff filed her initial claim for benefits on June 22, 2009, long before the change in nomenclature on September 3, 2013. The Court will use the terms interchangeably because the term "mental retardation" appears repeatedly in the administrative record.

2

The diagnostic description for intellectual disability is "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates onset of impairment before age 22." Hayes v. Comm'r of Soc. Sec., 357 F. App'x 672, 674–75 (6th Cir. 2009). "To demonstrate mental retardation, a claimant must demonstrate three factors to satisfy the diagnostic description: (1) subaverage intellectual functioning; (2) onset before age twenty-two; and (3) adaptive-skills limitations." Id. Additionally, a claimant "must satisfy 'any one of the four sets of criteria' in Listing § 12.05." Id. (quoting 20 C.F.R. Pt. 404, Subpart. P, App. 1, § 12.00(A)). If an "impairment satisfies the diagnostic description . . . and any one of the four sets of criteria, an impairment will be found to meet the listing." Daniels v. Comm'r of Soc. Sec., 70 F. App'x 868, 872 (6th Cir. 2003) (citation omitted).

Among the criteria, and the one at issue here, is Listing 12.05C, which requires "[a] valid verbal performance, or full scale IQ of 60 though 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" Hayes, 357 F. App'x 675. By way of shorthand, "[a] claimant satisfies Listing 12.05C, demonstrating 'intellectual disability' and ending the five-step inquiry, if [s]he can show: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation." Kennedy v. Colvin, 738 F.3d 1172, 1174 (9th Cir. 2013); see Illig v. Comm'r Soc. Sec., 570 F. App'x 262, 265 (3d Cir. 2014) (identifying essentially the same elements); Maresh v. Barnhart, 438 F.3d 897, 900 (8th Cir. 2006) (same).

**II.**

Turning to the facts of this case, Plaintiff, at the age of 16, was administered WISC-III and the WJTA-R testing[3] by a school psychologist, and found to have a verbal IQ score of 62, a Performance IQ of 66, a Full scale IQ score of 61, and the ability to read and write at approximately the third grade level. She was also found to "meet [the] criteria for special education services as a child with mental retardation." (Tr. at 272-73). The ALJ appears to have accepted that Plaintiff met the diagnostic description by observing that Plaintiff's "testing reflects sub-average intellectual functioning with deficits in adaptive functioning that initially manifested during the development period." (Doc. No. 10 at 27).

The ALJ also appears to agree that Plaintiff met Listing 12.05C's requirement that there be another physical or mental impairment that imposes a significant limitation. The ALJ specifically found that Plaintiff had impairments, including "right carpal tunnel syndrome," "obesity" and "depressive disorder." (Id. at 17). In the ALJ's opinion "these impairments are severe because they cause more than a minimal effect on the claimant's ability to work." (Id.); see, Marsh, 438 F.3d at 900 (collecting cases for the proposition that a "claimant has a physical or other mental impairment imposing an additional and significant work-related limitation of function" when it has "'more than slight or minimal' effect on the ability to perform work").

Where Plaintiff's claim faltered, according to the ALJ, was at the second prong of the analysis. In this regard, the ALJ wrote that "both 12.05(b) and 12.05(c) require *valid* IQ scores," and "the absence of such valid scores does not satisfy the criteria of those subsections." (Id. at 27) (emphasis in original).

---

[3] "WISC-III" is an acronym for Wechsler Intelligence Scale for Children, Third Edition, while "WJAT-R" is an acronym for Woodcock-Johnson Test of Achievement–Revised.

"It is within the province of an ALJ to make factual determinations regarding the validity of an IQ score, that is, whether the IQ score is 'an accurate reflection of [a claimant's] intellectual capabilities.'" Flores v. Astrue, 285 F. App'x 566, 568–69 (10th Cir. 2008) (citation omitted). Thus, "[t]he ALJ may choose to disregard I.Q. scores that would normally lead to a finding of disability when those scores are undermined by a doctor's full evaluation." Dragon v. Comm's Soc. Sec., 470 F. App'x 454, 46 (6th Cir. 2012).

As noted, testing of Plaintiff in 1998 indicated a full scale IQ of 61, which is at the very low end of Listing 12.05. Exactly why the ALJ chose to discount this testing is unclear. To the extent that the testing occurred while Plaintiff was in school and long before she sought benefits, this alone does not make the score invalid. See id. (stating that ALJ erred in disregarding IQ scores on the grounds that "they were obtained in 1992 when [the] claimaint was 12-years old" and in school because they were at least "relevant to establish the manifestation of [claimant's] impairment before the age of 22").

Regardless, subsequent testing mimicked the 1998 results. On October 30, 2009, Alice Garland, a Senior Psychological Examiner, examined Plaintiff. Based upon the results of WAIS-III testing,[4] Garland determined that Plaintiff had a verbal IQ of 61, a performance IQ of 60, and a full scale IQ of 58. Nevertheless, the ALJ found these scores invalid because the examiner "suspect[ed] these are slightly low scores." (Doc. No. 10 at 338). What Garland meant by "slightly low" is not indicated, but she did "not think [Plaintiff] is over borderline and could possibly be mildly retard." (Id.). Garland confirmed this in her "estimation of intelligence" section by finding that Plaintiff was "mildly retarded to borderline." (Id. at 337). As the Magistrate Judge observed, this is, at best, an

---

[4] "WAIS-IV" is an acronym for Wide Range Achievement Test – Third Edition.

5

ambiguous diagnosis.

In support of its position that a remand is unnecessary, the Government asserts that Garland's suspicions about Plaintiff putting forth less than her best effort was confirmed by subsequent testing. In this regard, the Government points to IQ testing conducted by Jeffrey Loftin, a psychologist, on January 5, 2012. Based upon WAIS-IV testing, Plaintiff was found to have a verbal comprehension of IQ of 81, a perceptual reasoning IQ of 79, a working memory IQ of 77, and a full scale IQ of 75. (Id. at 622). As a consequence, the Government asserts that "[t]he 17-point improvement in Plaintiff's full scale IQ raised significant question regarding Plaintiff's previous effort and the validity of the scores." (Doc. No. 30 at 4).

Bsed on the principle that the ALJ's entire decision must be scrutinized, the Government requests that the Court look to Dr. Loftin's opinion in determining whether substantial evidence exists to support the ALJ's decision. This presents two problems.

First, and most notably, it flies in the face of the Government's related principle, to wit, that it is within the ALJ's exclusive purview to assess the credibility of experts. The ALJ specifically stated that "little weight is given to the assessment of Dr. Loftin" (Doc. No. 10 at 34), yet the Government would have this Court credit his testimony in order to find that substantial evidence support's the ALJ's conclusion.[5]

Second, the Government's argument begs the question of whose opinion the Court should scrutinize. Previously, a different ALJ rendered a decision and also concluded that Plaintiff was not entitled to benefits. Just as in the decision presently under consideration, that ALJ gave "significant

---

[5] As the Magistrate Judge suggested, the ALJ's decision not to credit Dr. Loftin's testimony was based, at least in part, on the fact that he did not review the school records. This is curious given that the ALJ endorsed Garland's assessment even though Garland, too, did not review or consider the school records.

weight [to] the assessment of Ms. Garland," and "little weight . . . to the assessment of Dr. Loftin[.]" (Id. at 102-03). Certainly two individuals can look at the same evidence and reach the same conclusion, but the substantial similarity in the language of the two decisions raises the question of whether the present ALJ's determination was based upon her own independent evaluation of the record. In fact, the paragraph she devotes to assessing Dr. Loftin's credibility is virtually identical to that of the earlier ALJ, save for the inclusion of citations to the record. (Compare Doc. No. 10 at 34 with 103).

### IV.

An "ALJ's findings are conclusive as long as they are supported by substantial evidence." Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001). "'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept.'" Id. (quoting Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981)). "[T]his modest standard . . . puts a premium on whether the ALJ asked the right questions and provided reasonable answers[.]" Taskila v. Comm'r of Soc. Sec., 819 F.3d 902, 905 (6th Cir. 2016).

Although the ALJ in this case asked the right question by inquiring into whether Plaintiff had valid IQ scores that met Listing 12.05C, the Court cannot say that the ALJ's answer to that inquiry was reasonable based upon the record presented. Accordingly, the Court rules as follows:

(1) The R & R (Doc. No. 19) is **ADOPTED**;

(2) The Government's Objections (Doc. No. 20) are **OVERRULED**;

(3) Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 16) is **GRANTED** to the extent she seeks a remand; and

(4) This action is **REMANDED** the Commissioner of Social Security, pursuant to Sentence 4 of 42 U.S.C. § 405(g), for further consideration of whether Plaintiff's intellectual impairment meets or equals Listing 12.05C.

The Clerk of the Court shall enter a final judgment in accordance with Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE